HOUSING AUTHORITY *v.* MARY MELVIN
(4459)

DUPONT, C. J., STOUGHTON and FOTI, Js.

712

Argued November 3—decision released December 8, 1987

*Richard McCarthy,* for the appellant (defendant).

*John F. Merchant,* with whom, on the brief, was *Jerome J. Rosenblum,* for the appellee (plaintiff).

FOTI, J. The defendant tenant appeals in this summary process action from an execution of judgment in favor of the plaintiff. The defendant claims that the court erred (1) in granting the plaintiff's application for execution of judgment without scheduling a hearing pursuant to Practice Book § 387A,[1] and (2) in denying the defendant's motion for a hearing on the plaintiff's application for execution of judgment. We find no error.

The facts are not in dispute. In May, 1984, the defendant entered into a one year lease, which was automatically renewable, for an apartment managed by the plaintiff. The rental agreement required monthly payments of $132 which was subject to an annual adjust-

---

[1] "[Practice Book] Sec. 387A. SUMMARY PROCESS EXECUTIONS

"Whenever a summary process execution is requested because of a violation of a term in a judgment by stipulation, a hearing shall be required. If the violation consists of nonpayment of a sum certain, an affidavit with service certified in accordance with Sec. 120 shall be accepted in lieu of a hearing. . . ."

ment approved by the agency for housing and urban development (HUD).[2] The defendant became delinquent in her rent payments and, on March 6, 1985, entered into a stipulated agreement that called for a judgment of possession of the unit in favor of the plaintiff with a stay of execution through December 31, 1985. The stipulated agreement required her to pay $132 per month for use and occupancy "subject to HUD-approved adjustments." The defendant was also required to make monthly payments of $53 to remunerate the plaintiff for a $1591 rent arrearage. On May 13, 1985, the defendant was notified that, pursuant to the HUD-approved rent adjustment, her use and occupancy fee

---

[2] Attached to the defendant's original lease was the following provision:

"Redetermination of Rent, Dwelling Size and Eligibility

"a. Once a year Management will conduct a regular redetermination of rental.

"b. Tenant agrees to furnish such information and certifications regarding family composition and income as may be necessary for management to make determinations with respect to rent eligibility, appropriateness of dwelling size, and monthly rent.

"c. Tenant agrees to transfer to an appropriate size dwelling unit based on family composition, upon appropriate notice from management that such a dwelling unit is available.

"d. If the regular redetermination shows that the rent being charged the family must be changed, the rent shall be adjusted in accordance with the change in income.

"e. Rent as fixed in Section 2 or 3d will remain in effect for the period between regular rent redetermination unless during such period:

"(1) Rent shall be subject to change by reasons of change of income, family composition or extent of exceptional medical or other unusual expenses in accordance with HUD established schedules and criteria.

"(2) It is found that Tenant has misrepresented to Management the facts upon which his rent is based, so that the rent he is paying is less than he should have been charged. If this is found, then the increase in rent may be made retroactive or the lease may be terminated.

"f. In the event of any rent adjustment pursuant to Sections 3d or 3e, Management will mail or deliver a 'Notice of Rent Adjustment' to Tenant in accordance with Section 10 thereof. In the case of rent decrease, the adjustment will become effective the first day of the following month. In case of rent increases, the adjustment will become effective the first day following the first full calendar month, unless the rent increase results from a finding of intentional misrepresentation under Section 3e (2) above."

would increase by $28 per month beginning July 1, 1985. The defendant failed to pay the increased amount; rather, she submitted checks in the amount due prior to the adjustment. On July 26, 1985, the plaintiff notified the defendant that it intended to seek her immediate eviction for failure to pay the increased amount, and applied for a summary process execution of judgment pursuant to Practice Book § 387A.

The defendant moved for a hearing on the plaintiff's application for a summary process judgment, which the court denied. The defendant's objection to the court's consideration of the plaintiff's application without a hearing was overruled.

The defendant contends that a hearing was required on the plaintiff's application for judgment because the use and occupancy fee that resulted from the HUD-approved adjustment was not a "sum certain" as that term is used in Practice Book § 387A. The defendant claims that the court erred in rendering judgment for the plaintiff without holding a hearing. We disagree.

The defendant's original lease established rent contingent on an annual adjustment approved by HUD. An administrative appeal process was established for contesting these adjustments.[3] Thus, when the defendant entered into the stipulated agreement, she was made well aware of the process by which rents could be increased or decreased and the process for contesting those adjustments.[4] The defendant now claims that the adjusted amount was not a "sum certain" because

---

[3] The lease contained the following provision:

"Grievance Procedure

"All grievances or appeals arising under this lease shall be processed and resolved pursuant to the grievance procedure of Management which is in effect at the time such grievance or appeal arises, which procedure is posted in the Project Office and incorporated herein by reference."

[4] The record is devoid of any attempt by the defendant to challenge the HUD-approved adjustment of her use and occupancy fee.

it was not an exact dollar amount, but was an amount based on an independent agency's determination.

A "sum certain" is merely a term of art for a sum which is "capable of reduction to certainty." *Anderson v. Bridgeport,* 134 Conn. 260, 264, 56 A.2d 650 (1947). In contract actions, the price must be capable of being ascertained from the contract. "By this is not meant that the exact amount in figures must be stated in the agreement; however, where that is not the case, the price must, by the terms of the agreement, be capable of being definitely ascertained." 17 Am. Jur. 2d, Contracts § 82.

A sum certain which can be determined from the face of the agreement is distinguished from implied obligations which call on the trier of fact to determine a reasonable price. *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 346, 446 A.2d 1 (1982). In this case, the stipulated agreement represented a contract obligation of the defendant to pay for use and occupancy; that amount was capable of being ascertained with certainty subsequent to the HUD-approved adjustment.

The trial court's conclusion that the stipulated agreement represented a "sum certain" merely gave effect to the intentions of the parties expressed in the agreement. *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 422, 503 A.2d 582 (1986). Thus, the court's conclusion that Practice Book § 387A does not require a hearing on the plaintiff's application for execution of judgment was supported by the subordinate facts.

There is no error.

In this opinion the other judges concurred.